## SUPREME COURT.

ALFRED B. SANDS and GEORGE W. SANDS, executors of DAVID SANDS, deceased, agt. MATILDA CRAFT and CLARK SMITH, executors, &c., of ISAAC L. CRAFT, deceased.

Where an *executor* dies, having in his hands, at the time, *assets* belonging to the estate he represented as such executor, although the surviving executors have a right to such assets, they cannot treat the claim as an ordinary debt liquidated and ascertained, to be recovered by a common law action.

Such a claim, not being the subject of a common law action, is not one which the legal representatives of the deceased executor are bound to *refer*, under the act concerning the duties of executors and administrators, in the payment of debts and legacies.

*Brooklyn General Term, December,* 1859.

*Present,* LOTT, EMOTT *and* BROWN, *Justices.*

APPEAL from an order at special term, awarding costs to plaintiffs.

JOHN THOMPSON, *for plaintiffs.*

E. Q. ELDRIGDE, *for defendants.*

By the court—BROWN, Justice. Isaac L. Craft, the defendants' testator, was not the debtor of the plaintiffs, or of the plaintiffs' testator in his lifetime, and at the time of his death. He was the co-executor and trustee of the plaintiffs, in regard to the estate real and personal of David Sands, the plaintiffs' testator. He had been selected for this place of trust and confidence by David Sands himself, and, in connection with the plaintiffs, had taken into his hands the trust property, and proceeded to exe-

cute the trust. This was his precise position at the time he died, and his relation to the plaintiffs at the time was that of co-trustee, and not debtor. He owed to the *cestuis que trust* and to his co trustees a duty and obligation, and that was to apply the trust property to the uses of the will, and not to pay them a debt in the popular sense of the term, according to any promise of his, express or implied. He was responsible to the creditors, legatees and next of kin in the same manner and before the same tribunals as other executors, but not otherwise. He might have been cited before the surrogate, to render his accounts and for a distribution of the estate in his hands, and so he might have been impleaded upon the equity side of the court to account, and also for a distribution of the estate upon a bill filed; but not otherwise. He could not have been impleaded in a court of common law, (except possibly by the old action of account), because none of the common law forms of action were the appropriate remedy for that purpose. Before he could be required to pay over the trust property in his hands, his accounts were to be examined and adjusted, and all just allowance for disbursements and commissions were to be made to him, and if any portion of the estate in his hands consisted of securities for moneys invested in pursuance of any directions contained in the will, he would have been entitled to be credited with such investments, and the decree must also have provided for the disposition of such securities. In each of these proceedings he would have been entitled to take his costs out of the trust property, unless he was adjudged guilty of misconduct in the execution of the trust. These observations apply to executors generally, and not to the case of Isaac L. Craft in particular, because nothing appears, upon the papers in this motion, to show what the nature of the trust was. But they tend to show that his position at the time of his death was not that of debtor to the plaintiffs or their testator, in any sum of money for which the former had their action at the common law. His death did not change the nature or extent of his liability.

Section 44 of the act concerning the granting of letters tes-

tamentary provides, among other things, that upon the death of one of several executors, the remaining executors shall proceed to complete the execution of the will according to law. Assuming that the surviving executors had the right to the assets of the estate in the hands of their co-executor at the time of his death, they certainly could not treat them as an ordinary debt liquidated and ascertained, to be recovered by a common law action. If this could not have been done against the deceased executor in his lifetime, for the reasons I have already given, how can it be done as against his personal representatives after his death ? And if the claim was not the subject of a common law action, it was not a claim which his representatives were bound to refer, under the 36th section of the act concerning the duties of executors and administrators, in the payment of debts and legacies. Section 27 directs the executors and administrators to proceed with diligence to pay the debts of the deceased, and prescribes the order of payment. Section 34 provides for the publication of a notice, requiring all persons having claims against the deceased to exhibit the same with the vouchers to the executors by a given day. Section 35 provides that upon a claim being presented, the executors may require satisfactory vouchers in support thereof, and also the affidavit of the claimant that the same is justly due, that no payments have been made thereon, and that there are no offsets thereto within the knowledge of the claimant. Section 36 declares, that if the executor doubt the justice of the claim, he may enter into an agreement to refer the same to three referees, to be approved by the surrogate. And upon filing the same in the office of a clerk of the supreme court, or of a clerk of the court of common pleas, a rule may be entered referring the claim to the referees so named. The court then becomes possessed of the cause, and the referees are to proceed in the same manner, and be subject to the same control, as if the reference had been made in an action in which such court might by law direct a reference. The court may confirm or set aside the report, and the judgment to be entered upon it shall be effectual, in all respects, as if the same had been ren-

Sands agt. Craft.

dered in a suit commenced by ordinary process. Section 38 puts a limitation upon the recovery of claims disputed or rejected, which shall not be prosecuted within six months after such dispute or rejection.

It will be seen, I think, that the provisions to which I have referred, cannot be applied to the trust moneys or property in the hands of an executor at the time of his death. They contemplate an ordinary debt, for which the deceased was liable in his lifetime, upon a promise express or implied. A debt which may be supported by the oath of the creditor, which is justly due, and which may be the subject of an offset. The claim must be of such a nature as was cognizable in the supreme court, or court of common pleas, at the time the act took effect, and for which the common law courts, as distinguished from the equity courts, afforded an adequate and complete remedy to both parties.

I have already said that the assets of an estate in the hands of an executor, unadministered at the time of the executor's death, may consist of money unexpended, of securities for money invested in the name of the executor pursuant to some direction in the will, or of property unconverted into money, or in process of being converted into money. For all this the surviving executor, if there be one, or the administrator *de bonis non*, if not, would have a just claim against the representatives of the deceased executor. But it is manifest that a reference under the 36th section of the act, with the usual judgment given by the course and practice of the courts of common law, would be an imperfect and inadequate remedy for the settlement and recovery of such a claim.

I am therefore of opinion, that the defendants in this action were not only not bound to enter into an agreement to refer the claim against their testator in this action, pursuant to the 36th section of the statute, but it was their duty to refuse to enter into such a reference, because the plaintiffs' claim was not referable, and there may have been many reasons to think that, in such a proceeding, the rights and interests they represented could not be effectually protected.

The referee made his award of costs dependent upon the obligation of the defendants to enter into the agreement to refer the claim, and, as I think it was not referable without an action, the order made at the special term, awarding costs to the plaintiffs, should be reversed.