CATTARAUGUS COUNTY.—HON. ALFRED SPRING, SURROGATE.—January, 1882.

STEWART v. O'DONNELL.

*In the matter of the estate of* STEPHEN O'DONNELL, *deceased.*

It is no answer to an application by the successor of a deceased executor, to compel the personal representative of his predecessor to account and deliver over assets to him, that such deceased executor had a a claim against his own testator's estate, in respect to which claim a special proceeding, instituted by the executor's personal representative, is pending and undetermined.

A claim by the personal representative of a deceased executor, for debts paid and expenses incurred by such executor in administering the estate of his testator, is not referable under 2 R. S., 88, § 36 (Banks. 7th ed., 2299),—that statute being designed exclusively for the summary and speedy determination of claims *made by others against the decedent.*

Executors appointed by a court of another state have no authority to prosecute, in their representative capacity, a special proceeding in a court of this State. Their power and authority cannot be exercised

without the geographical limits of the state wherein the same originated; and the disability is not confined to the maintenance of *actions*. So *held*, where executors, appointed in Pennsylvania, of a deceased executor proceeded to collect, in this State, a claim alleged to exist in favor of the estate of their testator, against that of the first testator, represented by an administrator with the will annexed, appointed here as successor to claimants' testator, by means of a reference under the statute cited.

APPLICATION, by the administrator with the will of decedent annexed, to compel the ancillary representative of the deceased executor of that will to account, etc. The facts appear sufficiently in the opinion.

T. M. RIDER, *for petitioner.*

E. D. NORTHRUP, *for Elizabeth O'Donnell.*

THE SURROGATE.—Elihu S. Stewart, the administrator with the will of Stephen O'Donnell, deceased, annexed, has filed a petition, setting forth, among other things, that Cornelius O'Donnell was duly appointed executor of the last will and testament of Stephen, and assumed the burden and office of such executorship; that Cornelius died, without having procured a final settlement of his account as such executor, and had, at the time of his death, assets in his hands as executor; that Elizabeth O'Donnell and James Mackin were appointed executrix and executor of the last will and testament of Cornelius by the proper court in the state of Pennsylvania, where Cornelius resided at the time of his death; that Elizabeth was also duly appointed administratrix with the will of Cornelius annexed, in the State of New York, by letters of administration issued to her by the Surrogate of Cattaraugus county; that, before the appointment of Elizabeth in this State, she in conjunction with her co-executor presented a claim

to petitioner as administrator with the will of Stephen annexed, which claim was duly rejected by said administrator, and by agreement was duly and in form referred to Hon. William Manley of Ellicottville, N. Y.; that, upon the hearing before said referee, the proceeding instituted on behalf of the said executors was dismissed on the ground that, being foreign executors, the courts of this State had no jurisdiction over them.

The further facts also appear, that the report of said referee has never been filed in the county clerk's office, nor has judgment, therefore, been entered pursuant thereto.

The only question raised by the counsel for Elizabeth as such executrix is that the proceedings heretofore instituted, and dismissed by the referee, are still pending.

Conceding this to be so, I cannot see what possible answer it can be to this proceeding. If there were funds in the hands of Cornelius at the time of his decease belonging to the estate of Stephen, and which he held in his fiduciary character, clearly his executor should pay them over to his successor, the petitioner in these proceedings; and whatever claim he held against Stephen can be properly litigated before a referee, in case he acquires jurisdiction. But it would be an anomaly in the administration of estates to allow these executors to hold these funds simply on the ground that they, in their trust capacity, hold a claim against Stephen. It may be that Stephen's estate is insufficient to pay the claims outstanding against him, and the law never was designed to permit an executor to swallow up the entire fund in liquidating his claim, while others of the same class are left wholly unpaid.

But upon an examination of the claims or accounts held by the executors of Cornelius, I discover that the great bulk of them is for debts paid and expenses incurred by Cornelius in administering upon the estate of Stephen. This being so, they are not debts against deceased, and consequently not referable. The statute authorizing the reference of claims against a decedent was devised for the summary and speedy determination of claims held by others *against deceased;* and, the whole proceeding being instituted exclusively for this special purpose, the statutory limits cannot be transcended.

These claims are not claims against decedent, but they represent the doings and acts of Cornelius in the fulfilment of the trust reposed in him as executor, and he is properly accountable therefor to the Surrogate's court which invested him with authority; the proceedings now pending in this court are simply intended to cause the accounting to be made.

On the other hand, if any portion of the claims held by the executors of Cornelius are legitimately and properly against decedent, then certainly a reference can be had as to those, if jurisdiction of the person be obtained; but how would this affect a proceeding instituted for the purpose of compelling the executor to pay over the trust funds which he holds? It certainly would not be fair to other creditors to have these claims set off against Cornelius' claim, for he, as before intimated, would get full pay for his claim, while the others would be left to whistle for theirs. In any view, therefore, the reference, even if pending, and if jurisdiction of the person had been obtained, can be no

answer to this proceeding (see Sands v. Craft, *18 How. Pr.*, *438*; Akely v. Akely, *17 How. Pr.*, *21*).

*Second.* But clearly the referee had no jurisdiction of the persons, and the proceedings were, therefore, properly dismissed.

It is the recognized law of England, and in this country, that an administrator's power and authority are circumscribed by the boundaries of the state in which he received his appointment (2 Kent Com. [m. p.] *431*, *432*, *et seq.*, *and note c.*; Story on Conflict of Laws, *513*, *et seq.*; Parsons v. Lyman, *20 N. Y.*, *103–112*; Petersen v. Chem. Bank, *32 N. Y.*, *1*).

The executors in this case were appointed by a Pennsylvania court, and no ancillary letters had been issued in this State at the time of the dismissal of the proceedings before the referee, thus clearly bringing this case within the well established rule.

The counsel for the foreign executors, while recognizing the general force of the proposition that a foreign executor has no authority beyond the jurisdiction in which letters were issued to him, argues that the cases refer only to *actions*, and that this reference is simply a special proceeding. The reference was designed to determine and establish the validity or invalidity of claims presented, and, by whatever name you designate it, the proceeding requires the interposition of the executor, his appearance in court, the *approval of the Surrogate*, and all the other formula necessary in the trial of any *action*.

But the cases do not hinge on any *form* to designate the proceeding; the principle recognized in all of them is that the *power* of an administrator does not extend

beyond the geographical limits of the state in which his authority was created, and the authorities do not use the word *action* in defining the extent of this power.

That a foreign administrator is restrained and prevented from *suing* to recover a debt, his due, and cannot be sued for a debt he owes in his representative capacity, but can be a party to a special proceeding which would accomplish the same object is a preposterous proposition.

The law has provided ample measures for the benefit of foreign administrators by authorizing the issue of ancillary letters, and the very existence of the statute permitting this is tacit proof of the limited power of such administrators.

These proceedings are authorized by § 2606 of the Code of Civil Procedure, and I direct that an order be entered requiring Elizabeth O'Donnell to account, etc., in accordance with the prayer of the petition.